AO 91 (Rev. 11/11) Criminal Complaint  AUSA Brian Havey (312) 469-6305

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

THEODORE NELSON

CASE NUMBER: 25CR287

FILED
5/30/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief: On or about May 29, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant, THEODORE NELSON, violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2113(a) | Defendant, by intimidation, did knowingly take and attempt to take, from the person and presence of another, money belonging to, and in the care, custody, control, management, and possession of a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation. |

This criminal complaint is based upon these facts:

 X   Continued on the attached sheet.

/s/ Cameron Gordon (MDW with consent)

CAMERON GORDON
Special Agent
Federal Bureau of Investigation

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: May 30, 2025

*Judge's signature*

City and state: Chicago, Illinois

M. DAVID WEISMAN, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, CAMERON GORDON, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation, and I have been so employed for approximately three years. My current responsibilities include the investigation of violent crimes, including bank robbery, among other crimes.

2. This affidavit is submitted in support of a criminal complaint alleging that THEODORE NELSON has violated Title 18, United States Code, Section 2113(a) (bank robbery). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that NELSON committed the bank robbery offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, conversations that I have had with other law enforcement personnel who have knowledge of the events and circumstances described herein, interviews of witnesses, and a review of video recordings and photographs.

4. On May 29, 2025, the FBI's Chicago Field Office, Violent Crime and Fugitive Task Force (VCFTF), was notified of a bank robbery reported by Fifth Third

Bank, 3601 W. Broadway, Chicago, Illinois, occurring at approximately 11:05 a.m. that morning.

5. After being notified of the robbery, law enforcement officers, including myself, went to the bank and spoke to the victim bank teller. Below is a general, non-verbatim summary of the pertinent facts reported by the victim teller:

a. She observed a man enter the bank and approach her teller counter. The man was wearing what she described as a "white Covid style facemask." He pulled down the mask and stated something to the effect of, "I'm here to rob you. I have a gun. I'm going to shoot. I want everything."

b. The victim teller did not see a gun, but she was genuinely concerned that the robber might have a gun, and she wanted to get the robber out of the bank as quickly as possible.

c. The victim teller proceeded to open the cash drawer at her teller station and trigger an internal silent alarm, which she called the "panic button." She then quickly removed all of the cash that she was able to grab from the top drawer, and handed it to the robber. The robber exited the bank with the money. The victim teller then locked the bank doors.

d. The victim teller gave a physical description of the robber, which included the following details: black male with a "low-style" haircut, wearing a white Covid mask and a dark colored T-shirt. She recalled that the robber's T-shirt bore the lettering "ABC'S" on the left side, along with what appeared to white-colored children's blocks.

6. While at the bank, law enforcement officers reviewed bank surveillance footage of the interior and exterior of the bank at the time of the robbery. In viewing this footage, law enforcement officers were able to determine the following:

a. A man matching the physical description provided by the victim teller exited a white taxicab (taxicab number 4627) that was parked directly in front of the bank's entrance, at approximately 11:04 a.m. Below is a screen shot from that surveillance video:



b. A screenshot taken from video surveillance footage of the interior of the bank appears to show that same man standing at the victim teller's station, and pulling down his facemask, consistent with the victim teller's statements to FBI agents (see below):





c. The bank's exterior surveillance camera depicted the robber re-entering the same taxicab at approximately at 11:05 a.m., after which the taxi departed the bank:



7. After viewing the bank video surveillance footage, law enforcement officers were able to identify the cab company and request assistance in identifying the taxi driver and drop-off location of the passenger. Law enforcement officers spoke to the taxi company's point of contact, who was able to identify the driver of taxicab #4627.

8. Law enforcement officers then interviewed the taxi driver in-person at City Services cab office, located at 2601 West Peterson, Chicago, Illinois. The taxi driver stated, among other things, that:

a. He picked up the passenger at North Lake Shore Drive and West Diversey Parkway at approximately 10:58 a.m. and drove him to the Fifth Third Bank branch located at 3601 W. Broadway, at the passenger's request.

5

b. The passenger further requested the taxi driver to wait for him while he went into the bank.

c. Shortly thereafter, the passenger exited the bank, got back into the taxi, and requested the driver to take him to 76th and South Cottage Grove, Chicago, Illinois. The taxi driver complied with his request. The passenger stated something to the effect, "I'm going to the hotel up here on the left."

9. Meanwhile, the point of contact of the taxi company informed law enforcement officers that the interior of the company's taxis contain video cameras and that such footage from this particular taxi (#4627) could be reviewed by the agents. Below are screenshots taken from the taxi's video camera, depicting, at approximately 11:42 a.m., a man matching the physical description of the robber:

 

10. Based on the information provided by the taxi company, law enforcement officers then went to the Empire Motel, where the taxi driver had dropped off the passenger. There, motel personnel were shown a series of still images

from the bank and taxicab. The motel personnel confirmed the subject visited the front office at approximately 2:19 p.m. The motel personnel permitted law enforcement officers to view footage from the motel's exterior video surveillance cameras. A video recording appeared to show a man matching the robber's physical description, still wearing the facemask, walking toward motel room number 107 at approximately 11:37 a.m. (see below):



(Although the taxicab footage depicted the passenger exiting the taxi at approximately 11:42 a.m., and the hotel surveillance footage showed the passenger walking toward room 107 at approximately 11:37 a.m., hotel personnel indicated their camera is about 5 minutes slow, which would account for the 5-minute discrepancy between the taxi and hotel videos.)

7

11. Motel personnel provided law enforcement officers with a copy of the registration card for room 107. According to that registration information, the occupant of room 107 was a man named THEODORE NELSON. Empire Motel surveillance footage revealed the subject entered and was occupying room 108.

12. At approximately 4:40 p.m., law enforcement officers contacted an unknown individual who was in and out of room 108. Officers asked that unknown individual to send "Theo" out, the guy in the blue shirt. A few moments later the man matching the robber's description exited room 108. Officers approached him outside of room 108 at approximately 4:44 p.m. and placed him under arrest.

13. The arrestee was identified by his Illinois identification card found on his person as THEODORE NELSON. At the time of arrest, NELSON was wearing clothing matching that of the bank robber, specifically, a dark colored T-shirt with white children blocks labeled "ABC'S" on the left side, and white Covid-style facemask on his person.

14. At a CPD police station, law enforcement officers read NELSON his *Miranda* rights at approximately 5:48 p.m. NELSON waived his *Miranda* rights and consented to an interview. During the interview, NELSON confessed to the bank robbery, stating, among other things:

    a. NELSON admitted to robbing Fifth Third bank by stating to the victim bank teller something to the effect, "Sorry, I'm homeless. I need money." NELSON explained that the victim teller then gave him $420.

      b.    NELSON was shown a series of photographs from the bank and taxicab. NELSON positively identified himself as being the subject matching the robber's description.

      c.    NELSON indicated that he booked a room at Empire Motel for a drug dealer.

      d.    NELSON described using the money from the robbery for the taxicab ride and to buy narcotics.

15.    Based on an audit of the victim teller's cash drawer conducted by Fifth Third Bank after the robbery, the bank has concluded that the victim teller gave cash to the robber in an amount totaling approximately $420. Fifth Third Bank personnel have further confirmed that the retail banking deposits of Fifth Third Bank are insured by the Federal Deposit Insurance Corporation.

16. Based upon the facts summarized above, I respectfully submit that there is probable cause to believe that, on May 29, 2025, defendant THEODORE NELSON did, by intimidation, knowingly take and attempt to take from the person and presence of a bank employee, approximately $420 in United States currency belonging to, and in the care, custody, control, management, and possession of Fifth Third Bank, 3601 North Broadway, Chicago, Illinois, the deposits of which were insured by the FDIC, in violation of Title 18, United States Code, Section 2113(a).

FURTHER AFFIANT SAYETH NOT.

/s/ Cameron Gordon (MDW with consent)

CAMERON GORDON
Special Agent
Federal Bureau of Investigation

SWORN TO AND AFFIRMED by telephone May 30, 2025.

M. DAVID WEISMAN
United States Magistrate Judge